UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARSHA L. GLEASON, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) No. 1:13-cv-00972-SEB-MJD |
| CAROLYN W. COLVIN Acting Commissioner of the Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) |

## **REPORT AND RECOMMENDATION**

Plaintiff Marsha Lynn Gleason requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits under Title II of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d). For the reasons set forth below, the Magistrate Judge recommends that the decision of the Commissioner be **AFFIRMED**.

### I. **Procedural History**

Gleason filed an application for DIB on September 17, 2010, alleging an onset of disability of May 14, 2010. Gleason's application was denied initially and on reconsideration. Gleason requested a hearing which was held on February 6, 2012 before Administrative Law Judge Edward Studzinski ("ALJ"). The ALJ denied Gleason's application on February 22, 2012. The Appeals Council denied Gleason's request for review on April 16, 2013, making the ALJ's decision the final decision for purposes of review. Gleason filed her Complaint on June 18, 2013.

## II.     Factual Background and Medical History

Marsha Lynn Gleason was 51 years old on the alleged onset date of disability. She has past relevant work experience as a maintenance helper. Gleason experiences frequent headaches and pain in her neck, back and left shoulder. She also suffers from depression and anxiety.

Gleason began to have persistent headaches in January 2010. She sought treatment from Linda Tague, M.D., her primary care physician. The pain would begin in her neck and radiate to the back of her head and shoulders. She would receive injections for treatment. In April 2010, Gleason was diagnosed with cervical radiculopathy. Gleason underwent a MRI of the cervical spine in June 2010 which revealed disc dessication at the C5-C6 level with left C6 nerve root compression.

Dr. Charles Simchak became Gleason's treating neurologist in July 2010. He diagnosed Gleason with chronic daily migranous headaches and treated her with a combination of medications.

In August 2010, Gleason underwent surgery for a cervical fusion at the C4-C5 and C5-C6. She experienced no complications from the surgery and Dr. Simchak found that Gleason had overall improvement in her headaches following the treatment of her neck. However, Gleason continued to complain of pain in her neck, head, and left shoulder.

Gleason went to rehab therapy at the Athens Sports Therapy & Rehab and attended six sessions. She continued to report pain in her left shoulder and was put on a lifting restriction of ten pounds.

At the request of the Disability Determination Bureau ("state agency") Gleason received a consultative examination from James Ascough, Ph.D, HSPP in October 2010. Dr. Ascough diagnosed Gleason with Depressive Disorder, not otherwise specified and Anxiety Disorder, not otherwise specified. In Dr. Ascough's medical source statement, Dr. Ascough noted that Gleason

indicated that she did not have trouble with cognitive aspects of work and that with continued medical treatment Gleason felt she could return to work.

Following the consultative examination, in November 2010, state agency doctor Randal Horton, Psy. D. completed a Psychiatric Review Technique. Dr. Horton opined that Gleason did not have a severe mental impairment and that Gleason had only mild difficulties in maintaining concentration, persistence or pace. That decision was affirmed by state agency psychologist Dr. Gange.

On request of the state agency, Gleason received a consultative examination from Dr. Luella Bangura in December 2010. Dr. Bangura opined that Gleason would have difficulty handling objects, carrying and lifting, but no difficulties sitting, standing or walking. Dr. Bangura also noted that Gleason has a mental impairment that would affect her ability to sustain concentration, memory and social interaction, but suggested that Gleason seek a psychiatric evaluation.

Based on the medical evidence in the record, state agency physician Dr. Ruiz completed a Physical RFC Assessment in January 2011. Dr. Ruiz opined that Gleason could occasionally lift/carry twenty pounds, ten pounds frequently and could only occasionally perform bilateral overhead reaching. That decision was affirmed by state agency physician Dr. Sands.

Gleason sought treatment from Louis Metzman, M.D. for complaints of left shoulder pain from November 2010 through February 2011. Dr. Metzman recommended that Gleason undergo arthroscopy, acromioplasty, and distal clavicle resection. Gleason had this surgery in February 2011.

In an undated letter, Dr. Tague opined that Gleason had gradually become disabled due to pain, swelling and inflammation in her neck and shoulder. She also opined that Gleason's stress

level prevented her from maintaining employment in an environment where physical activity was not necessary.

In September 2011, Dr. Metzman submitted an opinion on Gleason's work status. Dr. Metzman opined that Gleason could return to work with the following limitations: no repetitive lifting above the shoulder with her left arm; no lifting more than five pounds with the left arm; and no repetitive overhead use.

### III.  Applicable Standard

To be eligible for DIB, a claimant must have a disability under 42 U.S.C. § 423. Disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-

month duration requirement; if so, the claimant is disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by the court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

## IV. The ALJ's Decision

Applying the five-step analysis, the ALJ found at step one that Gleason had not engaged in substantial gainful activity since May 14, 2010, the alleged onset date. At step two, the ALJ found that Gleason had the following severe impairments: headaches, degenerative disc disease, residuals from cervical fusion, residuals from shoulder surgery, obesity, depression, and anxiety.

5

At step three, the ALJ determined that Gleason did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Next, the ALJ found that Gleason had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following limitations: Gleason is limited in her left upper extremity such that she can only lift/carry/push/pull five pounds solely with that extremity; she can occasionally reach in all directions with her left arm; she is not restricted in her ability to use her right upper extremity; she can never climb ladders/ropes/scaffolds, but can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; Gleason is capable of only simple decision making and using simple judgment in a work environment with only occasional minor changes; and Gleason cannot perform work that requires direct public service or that is performed within crowds, but is capable of brief and superficial contact with public, co-workers and supervisors.

At step four, the ALJ determined that Gleason was unable to perform any past relevant work. At step five, the ALJ determined that, considering Gleason's age, experience, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Gleason could perform. Therefore, the ALJ determined that Gleason was not disabled.

## V.     Discussion

The central issue in this matter is whether there is substantial evidence to support the ALJ's decision that Gleason was not disabled. *Dixon*, 270 F.3d at 1176. Gleason raises two arguments on review: 1) the ALJ's RFC determination and hypothetical were incomplete as they failed to include all of Gleason's limitations; and 2) the ALJ did not meet his burden at step five

because the jobs recommended by the vocational expert ("VE") are not consistent with the Dictionary of Occupational Titles ("DOT").

### A. The ALJ did not err in the hypothetical posed to the vocational expert.

Gleason first argues that the ALJ failed to include all limitations in the RFC and the hypothetical to the VE. Gleason asserts that she is limited in concentration, persistence or pace[1] and bilateral overhead reaching and these limitations were not specifically included in the RFC.

#### 1. Concentration, Persistence or Pace

The ALJ specifically found that Gleason had moderate difficulties in maintaining concentration, persistence or pace. [R. at 17-18, 23-24.] As such, the ALJ limited Gleason to "simple decision making and using simple judgment in a work environment with occasional minor changes." [R. at 18, 24.] However, it is Gleason's contention that this limitation does not properly account for moderate difficulties in concentration, persistence or pace, and no such limitation was included in the hypothetical to the VE.

"When an ALJ poses a hypothetical question to a vocational expert, the question must include all limitations supported by *medical evidence* in the record. . . . More specifically, the question must account for *documented* limitations of 'concentration, persistence or pace.'" *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (emphasis added).

The Court finds that although the ALJ made the determination that Gleason has moderate limitations in concentration, persistence or pace, the ALJ did not rely on any medical evidence to support this finding and instead relied on claimant's testimony. [*See* R. at 23, 44-45, 48-50.] Gleason testified that her medications help when she has a headache, but make her "foggy-minded." [R. at 44.] Gleason also testified that stress is a trigger that makes her headaches worse

---

[1] In Plaintiff's brief, Plaintiff frequently switches back and forth between the term "concentration, persistence and pace" and the correct standard of "concentration, persistence or pace."

and she has a lot of stress in her life. [R. at 45.] Based on this, the ALJ then posed his hypothetical question to the VE which the ALJ made clear that Gleason should only be doing "low stress work." [R. at 49-50.] The ALJ noted in his decision that the state agency psychologists determined that Gleason had only mild difficulties in maintaining concentration, persistence or pace and accorded their opinions some weight "as they are consistent with the evidence of record." [R. at 22-23.] However the ALJ "[gave] the claimant the benefit of the doubt" and found Gleason's mental impairments to be more severe as "the claimant testified about her medications causing her difficulty in concentration, persistence, or pace." [R. at 23.] There is no other medical evidence that indicates Gleason has difficultly in concentration, persistence or pace. There is also no other documented evidence that Gleason's medications cause any difficulties in concentration, persistence or pace other than Dr. Bangura's assertion that Gleason has a mental impairment that would affect her ability to sustain concentration, memory and social interaction. [R. at 334.] However, Dr. Bangura is not a mental health professional and even suggested that Gleason seek a psychiatric evaluation. [*Id*.] Gleason also does not direct the Court to any medical evidence that supports limitations in concentration, persistence or pace other than documentation that the headaches exist. As there is no medical evidence to support that Gleason had more than mild difficulties in concentration, persistence or pace, the ALJ was not required to include a limitation for concentration, persistence or pace in the hypothetical to the VE.

Even if the ALJ was required to include such a limitation, the Court finds that the ALJ satisfied this requirement. Although it is the best way to communicate this limitation to the VE, the specific terminology "concentration, persistence and pace" does not have to be included in the hypothetical. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). Alternative

phrasing is permissive when such phrasing "specifically exclude[s] those tasks that someone with the claimant's limitations would be unable to perform." *Id*. The Seventh Circuit has permitted alternative phrasing that restricted a claimant to low-stress work where a claimant's limitations were stress- or panic-related. *Id*.; *Johansen v. Barnhart*, 314 F.3d 283, 288-89 (7th Cir. 2002) (allowing a hypothetical that restricted the claimant to "repetitive, low-stress" work where claimant had a panic disorder); *Arnold v. Barnhart*, 473 F.3d 816, 820, 823 (7th Cir. 2007) (holding that a hypothetical which restricted the claimant to low-stress, low-production work was sufficient where the claimant's difficulties with concentration, persistence and pace arose from stress-induced headaches).

Here, Gleason testified that stress exacerbates her headaches and that she only takes her medication as needed when she has a headache. [*See* R. at 44, 45.] The ALJ thus created a hypothetical with a restriction for a stress-reduced work environment so as to not make her headaches worse. [*See* R. at 49-50.] In Plaintiff's reply brief, Gleason argues that her headaches are not stress-induced, but are organic in nature in that Gleason's post-surgery cervical disc disease are causing the headaches, not stress. [Dkt. 29 at 3; R. at 408.] Assuming that is true, the ALJ appeared to be concerned with factors that made the headaches worse, not preventing the cause. [R. at 49-50.] Further, no doctor opined that the headaches alone limited Gleason in concentration, persistence or pace.

The VE was also made aware of Gleason's restrictions in concentration, persistence or pace by Gleason's attorney. At the hearing, Gleason's attorney questioned the VE regarding a limitation that would require Gleason to be off task ten percent of the day, to which the VE responded the outcome would not be affected as employers tolerate ten percent of non-

9

productivity. [R. at 51.] Accordingly, the Court finds that the ALJ adequately accounted for Gleason's limitations in concentration, persistence or pace in the hypothetical to the VE.

        2.      **Reaching**

Gleason also asserts that the ALJ failed to include a limitation for bilateral overhead reaching in the hypothetical to the VE. Gleason argues that Dr. Metzman restricted Gleason to no overhead use of either arm and that the ALJ gave great weight to this opinion. While the ALJ did accord great weight to Dr. Metzman's opinion, [R. at 21] Dr. Metzman did not indicate that Gleason could never perform bilateral overhead reaching, only that she be restricted to "no *repetitive* overhead use." [R. at 461 (emphasis added).] At the hearing, the ALJ specifically noted that the state agency physicians restricted Gleason to occasional bilateral overhead reaching and asked the VE if this limitation would affect the hypothetical to which the VE replied that it would not. [R. at 50.] The state agency's position that Gleason is capable of performing occasional overhead work and Dr. Metzman's restriction of no repetitive overhead use are not inconsistent. Accordingly, the Court finds that the ALJ did not err with regard to the limitation on reaching.

    **B.**      **The ALJ did not err in relying on the vocational expert's testimony.**

Finally, Gleason argues that the ALJ committed error by failing to ask the VE whether the jobs provided conflicted with the Dictionary of Occupational Titles ("DOT"). Social Security Ruling 00-4p requires that an ALJ resolve any discrepancies between the VE's testimony and the DOT when there is an "*apparent* unresolved conflict." SSR 00-4p, 2000 WL 1898704 (December 4, 2000) (emphasis added). An ALJ satisfies this duty by inquiring into any possible conflicts between the testimony and the DOT. *Nicholson v. Astrue*, 341 Fed. Appx. 248, 254 (7th Cir. 2009). While Gleason asserts that the ALJ failed to question the VE about any potential

conflicts, the record unquestionably reflects otherwise. [R. at 51.] Gleason argues that the two jobs provided by the ALJ had apparent conflicts with the DOT. However, "[t]he VE did not mention such inconsistencies, and [Gleason's] counsel never identified any. [Thus,] [t]he ALJ did all that SSR 00-4p required." *Nicholson*, 341 Fed. Appx. at 254. Further, review of the positions in the DOT do not indicate any conflict, apparent or otherwise. Accordingly, the ALJ finds that the ALJ did not err in relying on the testimony of the VE.

## VI. Conclusion

For the reasons set forth above, substantial evidence supports the ALJ's conclusion that Norton was not disabled. The Magistrate Judge recommends that the Commissioner's decision be **AFFIRMED**. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date: 05/30/2014

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Annette Lee Rutkowski
LAW OFFICES OF ANNETTE RUTKOWSKI
Anetrutkowski@gmail.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov